IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE SLEEP LAB AT WEST HOUSTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| TEXAS CHILDREN'S HOSPITAL, | § | CIVIL ACTION NO. H-15-0151 |
| TEXAS CHILDREN'S HOSPITAL | § | |
| SELECT PLAN, SHERYL B. FULTZ, | § | |
| as PLAN ADMINISTRATOR and | § | |
| FIDUCIARY, and BLUE CROSS | § | |
| BLUE SHIELD OF TEXAS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, The Sleep Lab at West Houston, brings this action as assignee of Michael Moore against defendants, Texas Children's Hospital, Texas Children's Hospital Select Plan, Sheryl B. Fultz, as Plan Administrator and Fiduciary, Blue Cross Blue Shield of Texas, Inc. (collectively, "defendants"), under the Employment Retirement Income Security Act of 1974 ("ERISA") as amended, 29 U.S.C. § 1001, et seq., and federal common law, for claims arising from alleged breaches of the terms of an employee benefit plan ("the Plan") and breaches of fiduciary duty, seeking to compel defendants to provide certain health care benefits. Plaintiff also seeks costs and attorneys' fees reasonably incurred prosecuting this action. Pending before the court are Defendant Health Care Service Corporation's Motion to Dismiss Plaintiff's Complaint for

Damages and Declaratory Relief (Docket Entry No. 7), Defendant
Health Care Service Corporation's Motion for Leave to File Reply in
Support of Its Motion to Dismiss Plaintiff's Complaint for Damages
and Declaratory Relief (Docket Entry No. 15), and Motion to Dismiss
for Failure to State a Cause of Action by Defendants Texas
children's Hospital and the Texas Children's Hospital Select Plan
(Docket Entry No. 25).  For the reasons stated below, Health Care
Service Corporation's motion for leave to file reply and motion to
dismiss will be granted albeit without prejudice to plaintiff's
filing an amended complaint in accordance with the terms stated
below.  Because the motion to dismiss filed by Texas Children's
Hospital and the Texas Children's Hospital Select Plan was only
filed on May 27, 2015, it is not yet ripe for resolution.

### I.  Factual and Procedural Background

Plaintiff initiated this action against defendants by filing
its Complaint for Damages and Declaratory Relief (Docket Entry
No. 1) on January 19, 2015.  Plaintiff alleges the following facts:

> 6.  Texas Children's Hospital Select Plan beneficiary,
> Michael Moore, assigned to The Sleep Lab certain health
> benefits afforded to him under the terms of the Plan,
> including the right to institute legal enforcement action
> against Texas Children's for the collection of benefits
> under the provisions of the Plan. . . A copy of the Legal
> Assignment of Benefits and Designation of Authorized
> Representative is attached as **Exhibit B**.

> 7.  Blue Cross and Blue Shield of Texas, Inc.
> ("BCBSTX"), upon information and belief, is a division of
> Health Care Service Corporation, and was a third party
> administrator for Texas Children's and its Plan, was
> involved in misrepresenting the benefits and terms of the

Plan and denying Plaintiff's claims.  BCBSTX is located
in Dallas, Texas, which was at all times pertinent
providing third party administrative services to
beneficiaries of the Plan in the State of Texas.

8.   On March 18, 2013 and March 25, 2013, Texas
Children's employee and Plan beneficiary, Michael Moore,
underwent two separate Sleep Study medical procedures at
The Sleep Lab, performed by Dr. James Ludwick, MD, . . .
Mr. Moore assigned to The Sleep Lab the health benefits
afforded him under the terms of the Plan, as well as the
right to institute legal action against Texas Children's
for the enforcement of benefits in conformity with the
provisions of the Plan.  (**Ex. B**).

9.   At the time of the provision of services, Mr. Moore
had in full force and effect health care benefits
coverage under the Texas Children's Hospital Select Plan,
a welfare benefit plan governed by the terms of ERISA,
which provided coverage for the sleep diagnostic services
provided by The Sleep Lab.

10.   In accordance with the terms of the Legal Assignment
of Benefits and Designation of Authorized Representative
executed by Mr. Moore, The Sleep Lab submitted a claim
for health care benefits coverage for the sleep
diagnostic services provided to Mr. Moore.

11.   The Sleep Lab submitted claims containing all
information necessary for payment.  Despite submission of
the claims requesting payment for the services rendered
on behalf of the plan beneficiary, Defendants have
wrongfully denied The Sleep Lab's request and
significantly underpaid its claims.

12.   On or about May 10, 2013, August 21, 2013,
October 10, 2013, and May 6, 2014, Sleep Lab appealed the
denial of its request for payment in accordance with the
Plan's appeal procedures through multiple levels of
appeal.  Defendants have continued to deny The Sleep
Lab's appeals, and The Sleep Lab has exhausted the
internal appeal process.[1]

Based on these allegations, plaintiff asserts claims for:

(1) recovery of full benefits under ERISA § 502(a)(1)(B), 29 U.S.C.

---

[1]Complaint for Damages and Declaratory Relief, Docket Entry
No. 1 ("Plaintiff's Complaint"), pp. 3-4 ¶¶ 6-12.

§ 1132(a)(1)(B); (2) breach of fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); (3) failure to timely produce Plan documents pursuant to 29 U.S.C. § 1132(c)(1); (4) fraudulently and intentionally misrepresenting the terms of the Plan in violation of 29 U.S.C. § 1141; and for (5) unfair and deceptive trade practices in violation of the Texas Insurance Code § 541.051 and § 541.061.

## II.  HCSC's Motion to Dismiss

Health Care Service Corporation ("HCSC") moves to dismiss plaintiff's complaint in its entirety for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

## A.  Rule 12(b)(1)

### 1.  Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs challenges to the court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the

-4-

complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Clark v. Tarrant County, Texas, 798 F.2d 736, 741 (5th Cir. 1986). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual attack challenges the existence of subject matter jurisdiction in fact -- irrespective of the pleadings -- and matters outside the pleadings -- such as testimony and affidavits -- may be considered. Id. Because HCSC has not submitted evidence outside plaintiff's pleadings in support of its Rule 12(b)(1) motion to dismiss, the motion is a facial attack; and the court's review is limited to whether the complaint sufficiently alleges jurisdiction. Plaintiff, as the party asserting federal jurisdiction, has the burden of showing that the jurisdictional requirement has been met. Alabama-Coushatta Tribe of Texas v. United States, 757 F.3d 484, 487 (5th Cir. 2014). When facing a challenge to subject matter jurisdiction and other challenges on the merits, courts must consider the Rule 12(b)(1) jurisdictional challenge before addressing the merits of the case. Id.

    2. Analysis

    HCSC argues that Plaintiff's Complaint should be dismissed with prejudice in its entirety for lack of subject matter

jurisdiction pursuant to Rule 12(b)(1) because the assignment of benefits under which plaintiff sues is void due to the presence of an anti-assignment clause in the Plan.   Alternatively, HCSC argues that Counts II through V should be dismissed with prejudice pursuant to Rule 12(b)(1) because the assignment under which plaintiff sues is insufficient to assign a beneficiary's right to assert claims other than for recovery of ERISA benefits.

      (a)   Plaintiff's Allegations of Fact Are Not Sufficient to Establish Standing in Light of the Plan's Anti-Assignment Provision

HCSC argues that plaintiff lacks standing to bring a claim for Plan benefits because plaintiff does not have a valid assignment of Moore's rights under the Plan.   HCSC argues that plaintiff lacks a valid assignment of Moore's rights because "[t]he Plan (which is attached to the Complaint as Exhibit A) and related Plan documents contain unambiguous anti-assignment clauses that prohibit beneficiaries from assigning any 'right or benefit' to any third party, and therefore Plaintiff lacks standing to sue.   (*See* Doc. 1-1 at 112.)"[2]   The anti-assignment clause states:

**Non-Alienation of Benefits:**

No right or benefit provided for under any of the Plan will be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge and any attempt to do so will be void.   However, this non-alienation provision will

---

[2]Defendant Health Care Service Corporation's Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint for Damages and Declaratory Relief ("HCSC's Memorandum in Support of Motion to Dismiss"), Docket Entry No. 8, p. 5.

neither be construed to restrict or forfeit any subrogation rights of the Hospital under the Plan or any Component Benefit Program nor prevent you from directing the Plan Administrator, in accordance with the terms of the applicable programs, to pay expenses directly to a provider of services or products if those expenses are otherwise reimbursable to you under the programs.   In such event, the Plan shall be relieved of all further responsibility with respect to that particular expense.[3]

Plaintiff responds that defendant's anti-assignment argument is both legally and factually deficient because plaintiff "has obtained derivative standing . . . through the Assignment executed by Moore,"[4] and because "[d]efendant has acknowledged this through its course of dealings with plaintiff."[5]   Plaintiff argues that

[d]efendants were provided with the assignment from Moore to The Sleep Lab, processed the claim for benefits to **The Sleep Lab** (not Moore), paid a portion of the claim, and denied the remainder.   (*See* **Exhibits 1-3**).   Defendants also processed and denied two levels of appeals brought on behalf of The Sleep Lab and never raised the "anti-assignment" defense that HCSC raised now.   The attorney for Texas Children's Hospital also investigated The Sleep Lab's claims for payment and wrote numerous letters to The Sleep Lab — and never raised the "anti-assignment" defense.[6]

---

[3]<u>See</u> Exhibit F to Plaintiff's Complaint, Docket Entry No. 1-1, p. 112.

[4]Plaintiff's Response to Defendant's Motion to Dismiss, Docket Entry No. 13, p. 11.

[5]<u>Id.</u> (citing Exhibits 1 through 12; Exhibit 1 is a copy of the assignment executed by Moore, which is also attached to the Plaintiff's Complaint; Exhibits 2 through 12 are copies of documents showing the course of conduct between plaintiff and defendants pursuant to which plaintiff argues HCSC is estopped from relying on the non-assignment provision in the Plan).

[6]<u>Id.</u> at 12 & n.3 (explaining that "[t]he Sleep Lab understands that Broemer does not represent HCSC.   Nonetheless, it is note-worthy that Broemer, in his capacity as the attorney for Texas
(continued...)

Plaintiff argues that "[b]y accepting the assignment and processing the claims for payment made . . . Defendant has either waived and/or is estopped from claiming, any potential enforcement of the anti-assignment clause at issue."[7] Citing <u>Hermann Hospital v. MEBA Medical and Benefits Plan</u>, 959 F.2d 569, 574 (5th Cir. 1992), <u>overruled in part on other grounds by</u> <u>Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.</u>, 698 F.3d 229 (5th Cir. 2012) (en banc) (per curiam), <u>cert. denied</u>, 133 S. Ct. 1467 (2013), plaintiff argues that it

> relied on HCSC's actions in processing its claims and appeals. If the Court allows HCSC the benefit of the alleged anti-assignment clause, the only party which will be harmed is Mr. Moore, who will be obligated to pay for the procedure out of his own pocket. Because HCSC has waived or is estopped from enforcing the anti-assignment clause at issue, Defendant's Motion to Dismiss should be denied.[8]

Citing <u>Tango Transport v. Healthcare Financial Services L.L.C.</u>, 322 F.3d 888, 891, 893-94 (5th Cir. 2003), plaintiff also argues that it has standing to sue regardless of the assignment of benefits.[9]

In <u>Hermann Hospital</u>, 959 F.2d 569, the Fifth Circuit held that a plan was estopped from raising an anti-assignment provision in its plan agreement. The plaintiff, a hospital to whom a patient

---

[6](...continued)
Children's Hospital, also did not raise the 'anti-assignment' defense.").

[7]<u>Id.</u> at 12-13.

[8]<u>Id.</u> at 13.

[9]<u>Id.</u>

had assigned her rights under ERISA, had called the plan when the patient was first admitted and had been told by the plan that the patient was covered.  Id. at 574.  During the six months when the patient was in the hospital, the hospital repeatedly attempted to obtain payment for the services it was providing, but the plan continuously postponed payment, asserting only that it was "investigating" the claim.  Id.  Three years after the patient's death the hospital filed suit to recover benefits; at that point, the plan raised the anti-assignment clause for the first time.  Id. The court held that the plan was estopped from relying on the provision because "[t]he anti-assignment clause was contained in the documentation establishing the Plan," but the hospital, "which was not privy to the Plan, had no opportunity to review that documentation."  Id.  The court imposed an affirmative duty on the plan to "notify [the hospital] of th[e] [anti-assignment] clause if it intended to rely on it to avoid any attempted assignments," id., and concluded that the plan was estopped from raising the anti-assignment provision in light of its "protracted failure to assert the clause when [the hospital] requested payment pursuant to a clear and unambiguous assignment of payments for covered benefits."  Id. at 575.  Thus, under the Fifth Circuit's holding in Hermann Hospital, delay in raising a non-assignment clause can equitably estop its enforcement.  Nevertheless, reasoning that through the passage of ERISA Congress intended employers and employees to retain contractual freedom over employee-benefit

plans, the Fifth Circuit has subsequently recognized that anti-assignment provisions are generally effective and will operate to render a purported assignment invalid.  See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 352-53 (5th Cir. 2002).  Plaintiff does not dispute this. Instead, plaintiff argues that defendant has waived or is estopped from relying on the Plan's anti-assignment provision by virtue of the parties' course of conduct.

Plaintiff's reliance on Hermann Hospital in support of its argument that HCSC has waived or is estopped from relying on the Plan's anti-assignment provision is unpersuasive, however, because the complaint as currently drafted contains no facts about the parties' course of conduct, which if true, would allow the court to conclude that defendant has in fact waived or is estopped from relying on the Plan's anti-assignment provision.  See Hermann Hospital, 959 F.2d at 574 (finding an assignment valid despite the anti-assignment clause in the plan, based upon the course of dealing between the plan and the health care providers, but explaining that "[i]t had to be clear to [the insurer] that [the hospital], in admitting and providing services to Mrs. Nicholas, was relying on that assignment as its entitlement to recover payment for those Plan benefits").  While plaintiff has alleged that "Moore, assigned to The Sleep Lab certain health benefits afforded to him under the terms of the Plan, including the right to institute legal enforcement action against Texas Children's for the

collection of benefits under the provisions of the Plan,"[10]

regarding the parties' course of conduct plaintiff merely alleges:

> 11.  The Sleep Lab submitted claims containing all information necessary for payment. Despite submission of the claims requesting payment for the services rendered on behalf of the plan beneficiary, Defendants have wrongfully denied The Sleep Lab's request and significantly underpaid its claims.
>
> 12.  On or about May 10, 2013, August 21, 2013, October 10, 2013, and May 6, 2014, Sleep Lab appealed the denial of its request for payment in accordance with the Plan's appeal procedures through multiple levels of appeal.  Defendants have continued to deny The Sleep Lab's appeals, and The Sleep Lab has exhausted the internal appeal process.[11]

Plaintiff has not alleged any facts analogous to those at issue in Hermann Hospital, which led the Fifth Circuit to hold that the defendants were estopped from relying on that plan's anti-assignment provision, i.e., plaintiff has not alleged that it called the plan when Moore first sought treatment and that the plan told plaintiff that Moore was covered, that the plan continuously postponed payment asserting only that it was investigating the claim, or that the anti-assignment clause was contained in documentation that plaintiff had no opportunity to review. Moreover, plaintiff neither alleges nor argues that the defendants raised the anti-assignment clause for the first time after plaintiff filed suit.

---

[10]Plaintiff's Complaint, Docket Entry No. 1, p. 3 ¶ 6.

[11]Id. at 4 ¶¶ 10-12.

Plaintiff's reliance on Tango, 322 F.3d at 888, in support of its argument that medical providers are entitled to derivative standing to bring an ERISA claim even without a valid assignment of rights is also unpersuasive.   In Tango a participant in an ERISA plan executed an assignment of benefits to a provider for medical treatment he received, and the provider assigned the participant's outstanding accounts to a health care collection agency, which sought reimbursement from the insurer.   Id. at 889.   At issue was whether enforceable assignments were limited to health care providers.    The Fifth Circuit held the collection agency had derivative standing, as the medical provider assigned its right to payment to the collection agency.    Id.    The Fifth Circuit explained,

> denying derivative standing to health care providers
> would harm participants or beneficiaries because it would
> "discourage providers from becoming assignees and
> possibly from helping beneficiaries who were unable to
> pay them 'up-front.'" . . . Likewise, granting derivative
> standing to the assignees of health care providers helps
> plan participants and beneficiaries by encouraging
> providers to accept participants who are unable to pay up
> front.   Conversely, to bar health care providers from
> assigning their rights under ERISA, and shifting the risk
> of non-payment to a third-party, would chill health care
> providers' willingness to accept a patient.    Third
> parties like [collection agencies] will only be willing
> to purchase an assignment from a health care provider if
> they can be assured that they will be afforded standing
> to sue for reimbursement.

Id. at 894.   Contrary to plaintiff's argument, Tango did not hold that a medical provider has derivative standing to sue an ERISA plan even without a valid assignment.

"A medical provider cannot enforce the terms of a healthcare plan on its own account, . . . but a provider may have standing to sue derivatively to enforce an ERISA plan beneficiary's claim through a valid assignment." Innova Hospital San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc., 995 F. Supp. 2d 587, 599 (N.D. Tex. 2014) (citing Tango, 322 F.3d at 891-92, and North Cypress Medical Center Operating Co. v. CIGNA Healthcare, 782 F. Supp. 2d 294, 300 (S.D. Tex. 2011)). Thus, "[t]o state a basis to recover under ERISA or for breach of an insurance policy, [a medical provider] must plead that the patients covered under the plan or policy assigned their rights to [the provider]." Id. (quoting Electrostim Medical Services, Inc. v. Health Care Service Corp., 962 F. Supp. 2d 887, 905 (S.D. Tex. 2013)).

Because the Plan attached to Plaintiff's Complaint contains an anti-assignment provision, and because the allegations of fact contained in Plaintiff's Complaint are not sufficient to establish that HCSC has waived or is estopped from relying on the Plan's anti-assignment provision due to the parties' course of conduct, Plaintiff's Complaint is subject to dismissal under Rule 12(b)(1) for failure to allege facts sufficient to establish standing. See LeTourneau, 298 F.3d at 352 (rejecting the contention that all anti-assignment clauses are per se invalid vis-à-vis providers of health care services, and recognizing that ERISA allows the assignment of health care benefits but that validity of assignment depends on a construction of the plan at issue applying universally

-13-

recognized canons of contract interpretation).  See also Harris Methodist Fort Worth v. Sales Support Services Incorporated Employee Health Care Plan, 426 F.3d 330, 336 n.4 (5th Cir. 2005) (recognizing that "a plan can bar assignments in some situations").

> (b)  Even If Assignment is Not Void, Plaintiff's Allegations Are Not Sufficient to Establish Standing to Sue for Anything Other Than Plan Benefits

HCSC argues that even assuming that the assignment is not void, the assignment does not provide plaintiff standing to sue under ERISA for anything other than Plan benefits.  Citing Texas Life, Accident, Health & Hospital Service Insurance Guaranty Association v. Gaylord Entertainment Co., 105 F.3d 210, 218 (5th Cir. 1997), HCSC argues that "[o]nly an 'express and knowing assignment of an ERISA fiduciary breach claim is valid.'"[12] Asserting that "[t]he assignment attached as Exhibit B to the Motion (the "Assignment") does not expressly or knowingly assign anything other than claims for benefits," HCSC argues that

> it assigns only "all medical benefits, and/or insurance reimbursement, if any, otherwise payable to [Moore] for services rendered from [Plaintiff]" and "any claim, chose in action, or other right I may have to such group health plans, health insurance issuers or tortfeasor insurer(s) under any applicable insurance policies, employee benefits plan(s) or public policies with respect to medical expenses incurred as a result of the medical services I received from the above named provider(s), and to the full extent permissible under the law to claim or lien such medical benefits, settlement, insurance reimbursement and any applicable remedies . . ."

---

[12]HCSC's Memorandum in Support of Motion to Dismiss, Docket Entry No. 8, p. 8.

> (Doc. 1-2 (emphasis supplied).)   Notably, the Assignment
> does not assign Moore's right to sue under ERISA for
> breach of fiduciary duty, for civil penalties, or for
> other claims seeking relief other than Plan benefits. . .
> Instead, it only assigns Moore's rights to sue under "any
> applicable insurance policies, employee benefits plan(s)
> or public policies with respect to medical expenses."
> (*Id.*).[13]

Citing <u>Mid-Town Surgical Center, L.L.P. v. Humana Health Plan of Texas, Inc.</u>, 16 F. Supp. 3d 767, 776 (S.D. Tex. 2014), HCSC argues that "[g]iven that the Assignment is insufficient to confer standing on Plaintiff to pursue non-benefits claims, the Court should dismiss Counts II through V of the Complaint with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)."[14] HCSC also argues that plaintiff "fails to allege facts demonstrating that it has standing to assert claims under Section 502(c)(1), as the Assignment does not specifically assign Moore's right to assert claims for civil penalties."[15]

Citing <u>Tango</u>, 322 F.3d at 888, plaintiff responds that Moore was free to assign all legal rights under defendants' Plan to it, effectively placing it in Moore's shoes to enforce those rights under ERISA.[16]   Asserting that "[i]n this case, the language of the assignment is clear and unambiguous,"[17] plaintiff argues that

---

[13]<u>Id.</u> at 9.

[14]<u>Id.</u>

[15]<u>Id.</u>

[16]Plaintiff's Response to Defendant's Motion to Dismiss, Docket Entry No. 13, p. 15.

[17]<u>Id.</u>

Moore assigned *all* of his rights to The Sleep Lab,
including "non-benefit" rights.  (**Exhibit 1**).  Despite
Defendant's contention to the contrary, the assignment
signed by Moore expressly assigns *all* of his rights to
The Sleep Lab.  Defendant has a copy of the assignment
and has willfully chosen to ignore the expressly written
language in the assignment.  Accordingly, because the
assignment conveys all of Moore's rights to The Sleep
Lab, Defendant's argument must fail as a matter of law.[18]

Missing from plaintiff's argument is any reference to the

actual language of the assignment, which is attached to the

Complaint as Exhibit B.  In pertinent part the assignment states:

> In considering the amount of medical expenses to be
> incurred, I . . . hereby assign and convey directly to
> the above named healthcare provider(s), <u>as my designated
> Authorized Representative(s)</u>, all medical benefits and/or
> insurance reimbursement, if any, otherwise payable to me
> for services rendered from such provider(s), regardless
> of such provider's managed care network participation
> status. . .
>
> I hereby convey to the above named provider(s), to
> the full extent permissible under the law and under any
> applicable employee group health plan(s), insurance
> policies or liability claim, any claim, chose in action,
> or other right I may have to such group health plans,
> health insurance issuers or tortfeasor insurer(s) under
> any applicable insurance policies, employee benefits
> plan(s) or public policies with respect to medical
> expenses incurred as a result of the medical services I
> received from the above named provider(s), and to the
> full extent permissible under the law to claim or lien
> such medical benefits, settlement, insurance reimburse-
> ment and any applicable remedies, including, but are not
> limited to, (1) obtaining information about the claim to
> the same extent as the assignor; (2) submitting evidence;
> (3) making statements about facts or law; (4) making any
> request, or giving or receiving any notice about appeal
> proceedings; and (5) any administrative and judicial
> actions by such provider(s) to pursue such claim, chose
> in action or right against any liable party or employee
> group health plan(s), including, if necessary, bring suit
> by such provider(s) against any such liable party or

---

[18] <u>Id.</u>

employee group health plan in my name with derivative
standing but at such provider(s) expenses. . . .[19]

This assignment references only the right to payment of "all
medical benefits and/or insurance reimbursement . . . otherwise
payable to me for services rendered," and the right "to claim or
lien such medical benefits, settlement, insurance reimbursement and
any applicable remedies." It does not refer to any ERISA breach of
fiduciary duty, or other non-benefits ERISA claims. The assignment
is therefore insufficient as a matter of law to assign Moore's
non-benefits ERISA claims to plaintiff. See Mid-Town Surgical, 16
F. Supp. 3d at 775-76. See also Sanctuary Surgical Centre, Inc. v.
Aetna Inc., 546 F. App'x 846, 852 (11th Cir. 2013) (assignee lacked
standing to sue under § 1132(c)(1) where beneficiary "assign[ed]
only the right to receive benefits and not the right to assert
claims for breach of fiduciary duty or civil penalties"). Thus,
the court concludes that even if the Plan's anti-assignment
provision does not void the assignment, plaintiff lacks standing to
bring claims for anything other than ERISA Plan benefits.

**B.    Rule 12(b)(6)**

  1.   Standard of Review

Under Rule 8 of the Federal Rules of Civil Procedure, a
pleading must contain "a short and plain statement of the claim

---

[19]Exhibit B to Complaint for Damages and Declaratory Relief,
Docket Entry No. 1, paragraph titled:    "Legal Assignment of
Benefits and Designation of Authorized Representative" (emphasis in
original).

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 127 S. Ct. at 1966). When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are

central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)).

 2.   Analysis

  (a)   Plaintiff's Claim for Recovery of Benefits Fails

Asserting that defendants wrongfully denied its requests for payment in violation of 29 U.S.C. § 1132(a)(1)(B), plaintiff seeks recovery of full benefits due for services rendered to Plan beneficiary Moore together with costs and attorneys' fees.[20] Section 1132(a)(1) provides that a "participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan," or to collect penalties for failure to disclose documents, as set forth by § 1132(c).[21]   HCSC argues that plaintiff's claim

---

[20]Plaintiff's Complaint, Docket Entry No. 1, pp. 4-5 ¶¶ 13-18.

[21]The full text of § 1132(a)(1) states:

(a) Persons empowered to bring a civil action

 A civil action may be brought--

 (1) by a participant or beneficiary--

  (A) for the relief provided for in subsection (c) of this section, or

  (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1).

for benefits should be dismissed because it is not a proper party defendant and because plaintiff has failed to identify a plan term that makes its claims eligible for reimbursement.[22]

Under § 1132(a)(1)(B), "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan[.]" LifeCare Management Services L.L.C. v. Insurance Management Administrators Inc., 703 F.3d 835, 845 (5th Cir. 2013). See also North Cypress Medical Center, 782 F. Supp. 2d at 306 (finding that the plan administrator was a proper defendant because it "was responsible for making determinations to pay benefits at amounts drastically lower than the applicable ERISA plans require, and as such, exerts control over plan administration in a manner that harms [the provider]"). Plaintiff must plead specific facts to show that HCSC exercised "actual control over the claims process." LifeCare Management, 703 F.3d at 846.

In pertinent part Plaintiff's Complaint alleges that

Defendants' denial of Plaintiff's claims for benefit payments is in direct violation of the terms of the Plan. Specifically, Plaintiff's claims were wrongfully denied, purportedly based upon documents outside of the Plan, and terms not included in the Plan document.[23]

Plaintiff does not dispute that it has failed to allege which defendant controlled administration of the Plan or that it has failed to identify any specific Plan terms that were breached. Plaintiff argues that its

---

[22]HCSC's Memorandum in Support of Motion to Dismiss, Docket Entry No. 8, pp. 5-12.

[23]Plaintiff's Complaint, Docket Entry No. 1, p. 5 ¶ 18.

Complaint was prepared based on documents provided to it by Defendants.  To the extent that the Complaint may be lacking in specificity, Defendant has no one to blame but itself and its co-Defendants in that the denials of claimed benefits were all generic and non-specific. Moreover, the summary plan description was not sent to The Sleep Lab until *nine months* after it was requested. Finally, the denial of benefits was based on documents outside of the Plan.

As a result, until The Sleep Lab is able to conduct discovery in this case, because of the Defendants' action, it is not in a position to make a determination of the degree of fault which can be allocated to the Defendants.  At this stage, prior to discovery, what *is clear* is that The Sleep Lab's claims for benefits were wrongfully denied.  Which party, and to what extent, is responsible for the wrongful denial will be determined during the discovery process.  Nonetheless, prior to this process occurring, it is premature for The Sleep Lab's claims to be dismissed and Defendant's Motion should be denied.[24]

Plaintiff also argues that

HCSC's co-Defendant, Texas Children's Hospital, has already "pointed the finger" at HCSC as being the Plan Administrator. W. Fulton Broemer, the attorney for Texas Children's Hospital, wrote to The Sleep Lab on April 25, 2014, and told The Sleep Lab, "[HCSC] is the Plan's Claims Administrator. *As the Claims Administrator, [HCSC] is ultimately responsible for all claims determinations*." (**Exhibit 9**).  Based on Texas Children's Hospital's position, as conveyed by its attorney, HCSC decided not to pay The Sleep Lab for the procedures performed.[25]

Plaintiff asserts that it "is clear that [its] claims for benefits were wrongfully denied," but fails to allege any facts from which the court could reasonably conclude that its claim for

---

[24]Plaintiff's Response to Defendant's Motion to Dismiss, Docket Entry No. 13, p. 18.

[25]Id. at 18-19 (emphasis in original).

benefits has in fact been wrongfully denied.  Because plaintiff
attached the Plan to its Complaint, plaintiff's contention that
defendants have prevented it from identifying a plan term that
makes its claims eligible for reimbursement has no merit.[26]
Moreover, since the Plan identifies both the Plan Administrator and
the Claims Administrator for each of its various programs, and
plaintiff fails to allege that any of the defendants exercised
control over the denial of benefits, plaintiff's contention that
defendants have prevented it from identifying which administrator
is ultimately responsible for the denial of benefits at issue also
has no merit.  Because Plaintiff's Complaint neither identifies a
plan term that was breached nor alleges that any of the defendants
exercised actual control over the denial of benefits of which it
complains, plaintiff has failed to state an ERISA claim for
wrongful denial of benefits for which relief maybe granted.  See
Electrostim, 962 F. Supp. 2d at 902 (dismissing ERISA benefits
claim because the complaint failed to identify plan terms entitling
the plaintiff to reimbursement).

> (b)  Plaintiff's Claim for Breach of Fiduciary Duty Fails

Asserting that pursuant to ERISA § 404(a), 29 U.S.C.
§ 1104(a), Texas Children's Hospital and its designated agents have
a duty to discharge their duties with respect to the Plan solely in

---

[26]See Exhibit A to Plaintiff's Complaint for Damages and
Declaratory Relief, Docket Entry No. 1-1.

the interest of the Plan participants and their beneficiaries, plaintiff alleges that "Defendants' actions in denying Plaintiff's benefits and refusing to timely provide requested plan documents were in violation of each and every one of its fiduciary duties as set forth [in ERISA § 404(a)]."[27]   Defendant HCSC argues that plaintiff's claim for breach of fiduciary duty should be dismissed because that claim duplicates both the claim for benefits that plaintiff has asserted under § 502(a)(1)(B), and the claim for failure to timely produce plan documents asserted under § 502(c)(1).[28]

Assuming arguendo that plaintiff has standing to assert ERISA claims for more than Plan benefits, dismissal of plaintiff's claim for breach of fiduciary duties is nevertheless appropriate because claims for money damages under § 1132(a)(1)(B) arising from wrongful denial of benefits cannot coexist with claims for equitable relief under § 1132(a)(3). LifeCare Management, 703 F.3d at 846 n.10 ("[W]hen a beneficiary wants what was supposed to have been distributed under a plan, the appropriate remedy is a claim for denial of benefits under § 502(a)(1)(B) of ERISA rather than a fiduciary duty claim brought pursuant to § 502(a)(3)."). See also Tolson v. Avondale Industries, Inc., 141 F.3d 604, 610 (5th Cir.

---

[27]Plaintiff's Complaint, Docket Entry No. 1, p. 6 ¶ 22.

[28]HCSC's Memorandum in Support of Motion to Dismiss, Docket Entry No. 8, pp. 13-14.

1998) ("Because [the plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate.").

> (c)  Plaintiff's Claim for Failure to Timely Produce Plan Documents Fails

Asserting that "Plaintiff requested plan documents in writing pursuant to 29 U.S.C. 1024(b)(4), including the Master Plan document and the Summary Plan Description, on May 10, 2013,"[29] and that "[p]ursuant to 29 U.S.C. § 1132(c)(1), the requested documents were required to be provided to the Plaintiff within 30 days, or by June 10, 2013,"[30] plaintiff alleges that it "did not receive the requested plan documents within the prescribed 30 days, subjecting Defendants to a penalty of $110.00 per day pursuant to 29 U.S.C. 1132(c)(1), together with any other relief as this Court may deem appropriate under the circumstances."[31]  HCSC argues that plaintiff's claim for failure to timely produce plan documents should be dismissed because HCSC is not the Plan Administrator.[32]

Plaintiff's response in opposition focuses on its inability to determine at this stage of the case "which party exercised control

---

[29]Plaintiff's Complaint, Docket Entry No. 1, p. 6 ¶ 24.

[30]Id. ¶ 25.

[31]Id. at 7 ¶ 27.

[32]HCSC's Memorandum in Support of Motion to Dismiss, Docket Entry No. 8, pp. 14-16.

-24-

over the decision-making of the payment of benefits under the Plan."[33]   Citing <u>Brown v. Aetna Life Insurance Company</u>, 975 F. Supp. 2d 610, 618-19 (W.D. Tex. 2013), plaintiff argues that "[w]hen an individual and/or entity have exercised control and authority over a plan, it raises a question of fact whether they can be held liable as a *defacto* Plan Administrator."[34]   Plaintiff argues that "[t]he extent to which each Defendant exercised authority or control over the Plan, denied benefits, misrepresented plan terms and . . . participated in other breaches, is a question of fact and not appropriate for a Rule 12(b)(6) motion to dismiss."[35]

Under ERISA § 502(c)(1)(B), "[a]ny administrator who fails or refuses to comply with a request for any information . . . may in the court's discretion be personally liable . . . in the amount of up to $100 a day from the date of such failure or refusal."  29 U.S.C. § 1132(c)(1)(B).   As defined in the statute, the "administrator" is:  "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other

---

[33]Plaintiff's Response to Defendant's Motion to Dismiss, Docket Entry No. 13, p. 22.

[34]<u>Id.</u> at 21.

[35]<u>Id.</u> at 22.

person as the Secretary may by regulation prescribe." 29 U.S.C.
§ 1002(16)(A).   In <u>Brown</u>, 975 F. Supp. 2d at 618, the court
recognized that "an entity other than the named administrator may
nonetheless be held liable as a de facto administrator where the
plan delegates the administrator's duties to that entity." <u>Accord</u>
<u>North Cypress Medical Center</u>, 782 F. Supp. 2d at 307-08.

Even assuming, <u>arguendo</u>, that plaintiff has standing to assert
this claim, its claim for relief against HCSC under ERISA
§ 502(c)(1)(B) would be subject to dismissal because plaintiff's
complaint fails to identify the administrative entity or entities
to which written requests for Plan documents were made, and from
whom Plan documents were not received.   Because Plaintiff's
Complaint fails to allege to whom written requests for plan
documents were submitted, and also fails to allege which if any of
the defendants failed to provide requested plan documents,
plaintiff's claim for civil penalties for failure to provide Plan
documents is subject to dismissal for failure to state a claim for
which relief may be granted under ERISA § 1132(c)(1)(B).

>    (d)   Plaintiff's Claim for Misrepresentation of Plan
>          Terms Fails

Asserting that defendants "fraudulently and intentionally
misrepresented the terms of the Plan, relying upon documents
outside of the Plan in denying Plaintiff's claims and representing
to the Plaintiff that such documents and terms were controlling,"[36]

---

[36]Plaintiff's Complaint, Docket Entry No. 1, p. 7 ¶ 30.

plaintiff alleges that defendants are subject to fines of up to $100,000, and/or imprisonment of not more than ten years.[37] Defendant HCSC argues that plaintiff's claim for fraudulently and intentionally misrepresenting the terms of the Plan should be dismissed because ERISA § 511, 29 U.S.C. § 1141, does not confer a private right of action.[38] The court agrees. Section 1141 is a criminal provision the enforcement of which is the exclusive prerogative of the Attorney General. See West v. Butler, 621 F.2d 240, 244 (6th Cir. 1980); Phillips v. Amoco Oil Co., 799 F.2d 1464, 1472 (11th Cir. 1986) ("Section 1141 is a criminal statute that provides no private right of action but allows only for criminal prosecution by the United States Attorney General."); Puga v. Williamson-Dickie Manufacturing Co., Civil Action No. 4:09-CV-335-A, 2009 WL 3363823, * 4 (N.D. Tex. October 16, 2009) ("[Section] 1141 contains no private right of action, but is instead a criminal provision, the enforcement of which is the exclusive prerogative of the Attorney General."). Accordingly, plaintiff cannot state a claim for which relief may be granted under 29 U.S.C. § 1141.

> (e) Plaintiff's Claims for Violation of the Texas Insurance Code Fail

Asserting that

> Defendants' multiple misrepresentations to Plaintiff concerning the terms of the Plan and the benefits payable

---

[37]Id. at ¶ 31.

[38]HCSC's Memorandum in Support of Motion to Dismiss, Docket Entry No. 8, pp. 16-17.

> thereunder was in direct violation of 541.051(1)(A) and
> (B), . . . including, but not limited to, representations
> that documents outside of the Plan contained terms of the
> Plan, leading to false representations concerning the
> reasons for denial of the claims,[39]

and that pursuant to Texas Insurance Code 541.051, it is an unfair

method of competition or an unfair or deceptive act or practice in

the business of insurance to misrepresent an insurance policy,

plaintiff alleges that it has "suffered significant damages,

including . . . wrongful denial of coverage, as well as all costs

and attorney fees and other damages as to be shown."[40]   Defendant

HCSC argues that plaintiff's claims for violation of the Texas

Insurance Code should be dismissed because those claims are

preempted by ERISA.[41]

HCSC argues that plaintiff's claims for violation of the Texas

Insurance Code are completely preempted by ERISA because they are

"really   just   an   attempt   to   repackage   Plaintiff's   Section

502(a)(1)(B) claim as a state law claim."[42]   Quoting Giles v.

NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999), and

Aetna Health Inc. v. Davila, 124 S. Ct. 2488, 2495 (2004), HCSC

argues that these claims are completely preempted because

> "Section 502, by providing a civil enforcement cause of
> action, completely preempts any state cause of action
> seeking the same relief, regardless of how artfully

---

[39]Plaintiff's Complaint, Docket Entry No. 1, p. 8 ¶ 34.

[40]Id. at 8-9 ¶¶ 35-37.

[41]HCSC's Memorandum in Support of Motion to Dismiss, Docket
Entry No. 8, p. 17.

[42]Id.

pleaded as a state action." . . . As a result, "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."[43]

Citing <u>Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.</u>, 662 F.3d 376, 385-86 (5th Cir. 2011), and <u>Transitional Hospitals Corp. v. Blue Cross and Blue Shield of Texas, Inc.</u>, 164 F.3d 952, 955 (5th Cir. 1999), plaintiff responds that its Texas Insurance Code claims are not completely preempted by ERISA because

[a] state law claim that does not purport to regulate whether and to what extent benefits are provided under an ERISA plan, but rather, *"what representations an insurer makes to third parties about the extent to which it will pay for their services,"* is not preempted. . .

Here, Plaintiff **has** pled a valid cause of action under the Texas Insurance Code arising, not from Defendant's failure to pay benefits under the Plan, but Defendant's "multiple representations" about the terms of the Plan. As in the *Access Mediquip* case, Defendants, including, but not limited to, HCSC, are alleged to have made misrepresentations of coverage, including, but not limited to, misrepresenting the coverage for services provided by Plaintiff.[44]

State law causes of action are completely preempted by ERISA § 502(a)(1)(B) when (1) an individual, at some point in time, could have brought the claim under ERISA, and (2) there is no legal duty independent of ERISA or the plan terms that is implicated by the defendant's actions. <u>Davila</u>, 124 S. Ct. at 2496. To determine whether plaintiff's Texas Insurance Code claims are completely

---

[43]<u>Id.</u>

[44]Plaintiff's Response to Defendant's Motion to Dismiss, Docket Entry No. 13, pp. 24-25.

preempted the court must first determine whether plaintiff could have brought its claims under ERISA. A medical provider has standing to sue in federal court under § 502(a) if a plan beneficiary or participant has assigned to the provider the individual's right to benefits under the plan. Hermann Hospital, 845 F.2d at 1290. Plaintiff has asserted claims in its Complaint as an assignee of Moore, Plan beneficiary. Thus, for purposes of the first prong, plaintiff could — and in fact did — sue under § 502 of ERISA as an assignee.[45] However, this assignment of benefits does not alone determine whether the plaintiff's claims are completely preempted. Despite its standing to sue under ERISA, plaintiff's claims are completely preempted if, under Davila's second prong, there is no independent legal duty that supports the plaintiff's claims. Plaintiff contends that its Texas Insurance Code claims are independent causes of action based on dealings between parties.

In Access Mediquip, 662 F.3d at 376, the plaintiff alleged, among other things, that the defendant-insurer had made promises to pay for patients' medical bills and had misrepresented that it would "pay customary and reasonable charges" for services that the

_____

[45]Because plaintiff argues that defendants have waived or are estopped from relying on the Plan's anti-assignment provision and therefore may ultimately be able to allege facts sufficient to state an ERISA estoppel claim, the court's conclusion in § II, above, that plaintiff's allegations are not sufficient to establish standing as an assignee does not conflict with the court's conclusion here that plaintiff could sue defendants under § 502 of ERISA.

plaintiff provided.  Id. at 380-81.  The Fifth Circuit held that
the plaintiff's state law claims of promissory estoppel and
negligent misrepresentation were not preempted by ERISA.  Id. at
383-86.  The Fifth Circuit stressed:

> The merits of Access's misrepresentation claims do not
> depend on whether its services were or were not fully
> covered under the patients' plans.  If the plans provided
> less coverage than United's agents indicated, Access must
> still prove that it was reasonable to rely on their
> statements as representations of how much and under what
> terms Access could expect to be paid.  If the plans do
> provide the same level of coverage United indicated,
> Access may nevertheless seek to prove its misrepre-
> sentation claims by showing that United's statements
> regarding coverage, while accurate, were nevertheless
> misleading because United's agents omitted to mention
> that, covered or not, Access's services would not be
> reimbursed. . . Consultation of the plans' terms is thus
> not necessary to evaluate whether United's agents'
> statements were misleading.  The finder of fact need only
> determine (1) the amount and terms of reimbursement that
> Access could reasonably have expected given what could
> fairly be inferred from the statements, and (2) whether
> United's subsequent disposition of the reimbursement
> claims was consistent with that expectation.

Id. at 385 (internal citations omitted).

In Transitional Hospitals, 164 F.3d at 952, the Fifth Circuit
addressed whether a hospital's claims against an ERISA plan insurer
were subject to complete preemption.  The hospital alleged that,
prior to admitting the patient, defendants misrepresented that the
ERISA plan would pay 100% of the patient's hospital bills after
Medicare benefits were exhausted.  Id. at 953.  The hospital sued
defendants based on breach of contract and common law and statutory
misrepresentation.  The Fifth Circuit held, "ERISA does not preempt
state law when the state-law claim is brought by an independent,

third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage." Id. at 954. However, since the hospital's breach of contract claims were "based on defendants' alleged failure to pay the full amount of benefits due under the terms of the [ERISA] policy," those contract claims were preempted. Id. at 955.

Plaintiff's Complaint does not specifically describe any of the alleged misrepresentations. But plaintiff's allegations that the misrepresentations included "representations that documents outside of the Plan contained terms of the Plan, leading to false representations concerning the reasons for denial of the claims,"[46] demonstrate that the resolution of plaintiff's Texas Insurance Code claims will require the court to consider not just the misrepresentations, but also plaintiff's right to receive benefits under the terms of the Plan. Plaintiff's reliance on Access Mediquip and Transitional Hospitals in support of its argument that its Texas Insurance Claims are not preempted is not persuasive because unlike the Texas Insurance Code claims at issue here, the state law claims at issue in those cases were based on the prior approval/misrepresentation theory of recovery.

Plaintiff does not allege that despite prior approval of charges for the medical services provided to Plan beneficiary Moore

---

[46]Plaintiff's Complaint, Docket Entry No. 1, p. 8 ¶ 34.

and demand for payment, the Plan failed to pay the charges.  Nor does plaintiff allege that the Plan represented by either conduct or words that it would pay a reasonable price for the medical services provided to Moore and that plaintiff detrimentally relied on those representations.  Instead, as evidenced by the assertion in Plaintiff's Complaint that its Texas Insurance Code claims are based on allegations that it "suffered significant damages, including, but [not] limited to, wrongful denial of coverage,"[47] these claims are completely preempted by ERISA because regardless of how artfully pleaded as a state action, these claims seek the same relief as the claim for benefits that plaintiff has asserted under ERISA § 502(a)(1)(B).  See Giles, 172 F.3d at 337 ("Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action."); Davila, 124 S. Ct. at 2495 ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.").

Because the plaintiff's Texas Insurance Code claims against HCSC do not depend on the truth and legal effect of the alleged misrepresentations by the Plan but instead, depend on the right to payment under the Plan, consistent with the holdings in Davila,

---

[47]Plaintiff's Complaint, Docket Entry No. 1, p. 9 ¶ 37.

Transitional Hospitals, and Access Mediquip, the court concludes that the plaintiff's claims are preempted because they are not based on a legal duty that is independent of ERISA and the plan terms. Davila, 124 S. Ct. at 2496.

### III. Texas Children's Entities' Motion to Dismiss

On May 27, 2015, two days before the initial conference scheduled for Friday, May 29, 2015, Texas Children's Hospital and the Texas Children's Hospital Select Plan filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 8, 9, 12(b)(1), and 12(b)(6). Because the motion has only been on file for a short time, it is not ripe for resolution since plaintiff has not yet had the opportunity to respond. Nevertheless, because the motion raises the same issues that HCSC has raised in its motion to dismiss, for the reasons discussed in this Memorandum Opinion and Order the newly filed motion to dismiss appears to have merit.

### IV. Conclusions and Order

On April 6, 2015, the court signed the Order Granting Plaintiff The Sleep Lab at West Houston, As Assignee of Michael Moore's Unopposed Motion for Leave to File a Sur-Reply in Response to Defendant's Motion to Dismiss Plaintiff's Complaint (Docket Entry No. 19). Because the court has already granted plaintiff's motion to file a sur-reply, Defendant Health Care Service Corporation's Motion for Leave to File Reply in Support of Its

-34-

Motion to Dismiss Plaintiff's Complaint for Damages and Declaratory Relief (Docket Entry No. 15) is **GRANTED**.

For the reasons stated in § II.A, above, the court concludes that Plaintiff's Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) for failure to establish standing. Alternatively, for the reasons stated in § II.B, above, the court concludes that Plaintiff's Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. Accordingly, Defendant Health Care Service Corporation's Motion to Dismiss Plaintiff's Complaint for Damages and Declaratory Relief (Docket Entry No. 7) is **GRANTED**.

Since, however, plaintiff has not had an opportunity to file an amended complaint, and plaintiff's arguments in response to HCSC's motion to dismiss suggest that plaintiff should be given an opportunity to allege facts capable of establishing that defendants engaged in a course of conduct sufficient to estop defendants from relying on the Plan's anti-assignment provisions, the court is not persuaded that this action against HCSC should be dismissed with prejudice.

The Joint Discovery/Case Management Plan Under Rule 26(f) Federal Rules of Civil Procedure (Docket Entry No. 22 at ¶ 14) recognizes the possibility for early settlement:

> Plaintiff and Defendants' counsel discussed the possibility of prompt settlement or resolution of the

-35-

case during the Rule 26(f) conference.  The parties have agreed to engage in informal settlement negotiations. More specifically, the parties have agreed that once the Court has decided the pending Motion to Dismiss, Plaintiff will make a reasonable settlement demand that will be considered by Defendants in consideration of early resolution of this case.

Accordingly, the parties shall have thirty (30) days in which to attempt to settle the case.  If at the end of that thirty-day period the parties are unable to settle, the parties shall have another thirty (30) days in which to mediate or ask Magistrate Judge Johnson to conduct a settlement conference.  If the parties are still unable to resolve their dispute, plaintiff may file an amended complaint asserting ERISA estoppel claims only.  Counsel will submit a status report on July 2, 2015, and every thirty (30) days thereafter.  Counsel for both parties are admonished that the court will not countenance future submissions containing the type of arguments asserted in the reply and sur-reply filed as Docket Entry Nos. 15 and 16.

SIGNED at Houston, Texas, on this the 2nd day of June, 2015.

SIM LAKE
UNITED STATES DISTRICT JUDGE